STATE OF NORTH CAROLINA v. JOHN WILLIE GARNETT

No. 7426SC863

(Filed 5 February 1975)

1. **Criminal Law §§ 34, 66— participation in prior robbery — evidence admissible for identification of defendant**

    In a prosecution of defendant for armed robbery of a restaurant, the trial court did not err in allowing an eyewitness to testify that defendant had committed a similar robbery of the same store three days before the crime for which he was on trial, since that testimony tended to identify defendant as the perpetrator of the crime for which he was on trial.

2. **Criminal Law § 43— photographs of robbery — admissibility for illustration**

    The trial court in an armed robbery case properly allowed photographs of the robbery into evidence where a witness testified that the pictures clearly depicted the man who was robbing her, his clothing, the pistol he was carrying, and herself, and the trial judge instructed the jury that the photographs were being allowed into evidence solely for the purpose of illustrating the witness's testimony.

3. **Criminal Law § 75— statement made by defendant in patrol car — voluntariness**

    Although defendant testified that officers threatened him and elbowed him in the ribs, the record contains sufficient competent evidence to support the findings of the trial judge and the findings support his conclusion that a statement to an officer made while defendant was seated in a patrol car was freely, understandingly and voluntarily made.

APPEAL by defendant from *Copeland, Judge,* 3 June 1974 Session of Superior Court held in MECKLENBURG County. Heard in the Court of Appeals on 14 January 1975.

This is a criminal prosecution wherein the defendant, John Willie Garnett, was charged in a bill of indictment, proper in form, with armed robbery.

The State offered evidence tending to show the following: On 5 January 1974 Mrs. Fay Ingram was employed as a cashier at the Kentucky Fried Chicken restaurant on Belhaven Boulevard in Charlotte, N. C. Shortly after 5:00 p. m. the defendant entered the restaurant, pointed a pistol at Mrs. Ingram and said: "All right. Let me have it. This is it. Give it up." As directed, Mrs. Ingram then placed all the money from the cash register into a bag and gave it to the defendant. He was wearing a tan coat, green pants, and a dark shirt and was inside

the restaurant less than fifteen minutes. In order to illustrate the testimony of Mrs. Ingram, the State introduced into evidence, over the defendant's objection, five photographs of the 5 January 1974 robbery that had been taken by a hidden camera while the robbery was being committed. Mrs. Ingram testified that the pictures clearly depicted the man who was robbing her, his clothing, the pistol she had described, and herself. Also over the defendant's objection, Mrs. Ingram testified that the defendant had robbed the Kentucky Fried Chicken restaurant three days earlier, on 2 January 1974, while she was working as cashier. On this prior occasion the defendant and two other persons entered the restaurant between 5:00 p.m. and 6:00 p.m. After waiting in line for several minutes, the defendant pulled a shotgun from under his coat and said: "All right, this is it. Let me have it." He was wearing a tan coat and was inside the restaurant for approximately thirty minutes.

Officer D. L. Beveridge, a patrolman with the Charlotte Police Department, arrested the defendant at his home on 16 January 1974. He read the arrest warrant to the defendant, handcuffed him and placed him in the patrol car. At this point, a voir dire was conducted in the absence of the jury to determine the admissibility of a statement allegedly made by the defendant to Officer Beveridge. Officer Beveridge testified on voir dire that he advised the defendant of his Miranda rights after placing the defendant in the patrol car. Two other officers were present. Officer Dennis was driving and Officer Christmas was in the back seat with the defendant and Officer Beveridge. The defendant appeared sober and appeared to talk in a normal manner. He told Officer Beveridge that he understood his rights and agreed to answer questions without the presence of an attorney. The defendant then confessed to having robbed the Kentucky Fried Chicken restaurant on both 2 January 1974 and 5 January 1974. Officer Beveridge estimated that the reading of the Miranda warning and the confession occurred during the ten minutes it took to drive from the defendant's house to the Law Enforcement Center. During this period of time the defendant did not ask to speak to an attorney. Officer Christmas also testified on voir dire for the State. He stated that the defendant confessed to the robbery when Officer Beveridge advised him of his rights and asked the defendant if he desired to make a statement.

The defendant testified on voir dire that the officers had elbowed him in the ribs several times each and had threatened

to take him "behind some building and do something to [him]."
He denied having confessed to any crime.

At the conclusion of the voir dire the trial judge made
specific findings of fact and concluded as a matter of law "that
the defendant knowingly and intelligently waived the presence
of a lawyer and such statement as he made was freely and volun-
tarily made without promise of any kind or without threat of
any kind, either physical or mental."

Thereafter, Officer Beveridge testified before the jury that
he advised the defendant of his constitutional rights and that
no promises or threats were made to the defendant. Upon ask-
ing the defendant about the 5 January 1974 robbery, the de-
fendant told him that a "dude" in a black-over-gold Buick
Electra had taken him to the Kentucky Fried Chicken restaurant
for the purpose of robbing it and that this man had given him
a gun. After the robbery the unidentified man had given the
defendant a percentage of the stolen money and had kept the
remainder for himself.

The defendant did not offer any evidence.

Upon the jury's verdict of guilty as charged, the trial court
sentenced the defendant to a prison term of not less than twenty
(20) nor more than thirty (30) years. Defendant appealed.

*Attorney General Edmisten by Assistant Attorney General
Charles J. Murray for the State.*

*Walter H. Bennett, Jr., for defendant appellant.*

HEDRICK, Judge.

[1] Defendant contends that the trial court erred in allowing
Mrs. Ingram to testify that the defendant robbed the Kentucky
Fried Chicken restaurant on 2 January 1974. He also contends
it was error for the trial judge to summarize this testimony in
his instructions to the jury. We do not agree.

Although evidence of separate offenses is not admissible on
the issue of guilt if its only relevancy is to show the character
of the defendant or his disposition to commit an offense of
the nature of the one charged, 1 Stansbury's N. C. Evidence
(Brandis Revision) § 91, such evidence will not necessarily be
excluded if it tends to identify the defendant as the perpetrator
of the crime for which he is on trial. *State v. McClain,* 240 N.C.

171, 81 S.E. 2d 364 (1954). Due to the similarities of the two robberies and the proximity in time and place, the testimony objected to here is clearly relevant to prove that the defendant robbed the Kentucky Fried Chicken restaurant on 5 January 1974. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974). Furthermore, the trial judge specifically instructed the jury to disregard the testimony of Mrs. Ingram insofar as it might tend to show the commission of a separate criminal offense and to consider it only as it might relate to the identification of the defendant as the person who committed the offense for which he was standing trial. On the facts of this case, we hold there was no prejudicial error in overruling defendant's objections to this testimony.

[2] Defendant next contends that the trial court allowed the photographs of the robbery to be admitted into evidence without requiring the State to lay a proper foundation for their authenticity. We do not agree. In this State, the general rule is that where there is evidence of the accuracy of a photograph, it will be admitted into evidence for the limited purpose of explaining or illustrating the testimony of a witness that is relative and material to the matter in controversy. *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974); *State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973). Accuracy of the photograph is oftentimes established, as here, by the testimony of a witness who is familiar with the scene, object, or person portrayed therein. *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948); 1 Stansbury's N. C. Evidence (Brandis Revision) § 34. In the case at bar Mrs. Ingram sufficiently authenticated the photographs and the trial judge properly instructed the jury that the photographs were being allowed into evidence solely for the purpose of illustrating the testimony of Mrs. Ingram.

[3] Finally, defendant contends that the trial judge erred in admitting into evidence the statement allegedly made by him to Officer Beveridge. The test of the admissibility of the defendant's confession is whether it was voluntarily and understandingly made. *State v. Jones,* 278 N.C. 88, 178 S.E. 2d 820 (1971).

> " ' . . . When the State offers a confession in a criminal trial and defendant objects, the competency of the confession must be determined by the trial judge in a preliminary inquiry in the absence of the jury. *State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481. The trial judge hears the evidence, observes the demeanor of the witnesses, and re-

solves the question. *State v. Barber,* 268 N.C. 509, 151 S.E. 2d 51. His findings as to the voluntariness of the confession, and any other facts which determine whether it meets the requirements for admissibility, are conclusive if they are supported by competent evidence in the record. *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Keith,* 266 N.C. 263, 145 S.E. 2d 841.' " *State v. Fox,* 277 N.C. 1, 24, 175 S.E. 2d 561, 575 (1970).

Here, upon the defendant's objection, the trial judge properly conducted a voir dire in the absence of the jury. After hearing evidence from both the State and the defendant on the question of the voluntariness of the defendant's confession, the trial judge made detailed findings of fact. Although defendant testified that the officers threatened him and elbowed him in the ribs, the record contains sufficient competent evidence to support the findings of the trial judge and the findings support his conclusion that the statement to Officer Beveridge was freely, understandingly and voluntarily made by the defendant.

The defendant had a fair trial free from prejudicial error.

No error.

Chief Judge BROCK and Judge PARKER concur.